IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALI NOSRAT et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 8:24-cv-03319-LKG ) ) Dated:  February 2, 2026 |
| MARCO RUBIO et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

The Plaintiffs, Ali Nosrat, Marzieh Motamedi and Gholmahossein Nosrat, bring this civil action against the Defendants, Marco Rubio, Secretary of the United States Department of State (the "State Department"), Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), and Pamela Bondi, United States Attorney General, in their official capacities, seeking to compel the Defendants to expedite the adjudication of the Plaintiff Gholmahossein Nosrat's visa application.[1]  ECF No. 1.  The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF Nos. 6 and 6-1.  The motion is fully briefed.  ECF Nos. 6, 6-1, 7, 7-1 and 8.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendants' motion to dismiss (ECF No. 6) and (2) **DISMISSES** the complaint.

---

[1] Defendants Marco Rubio, Kristi Noem, and Pamela Bondi are automatically substituted as parties to this action, replacing Defendants Anthony Blinken, Alejandro Mayorkas and Merrick Garland, respectively. *See* Fed. R. Civ. P. 25(d).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.  Factual Background

The Plaintiffs bring this civil action against the Defendants seeking to compel the Defendants to expedite the adjudication of the Plaintiff Gholmahossein Nosrat's visa application.[3]  In the complaint, the Plaintiffs assert the following three claims: (1) violation of the Immigration and Nationality Act (Count I), (2) violation of the Administrative Procedure Act (Count II), and (3) mandamus relief under the Mandamus Act (Count III).  *Id.* at ¶¶ 25-36.  As relief, the Plaintiffs seek, among other things, a writ of mandamus, declaratory and injunctive relief.  *Id.* at Prayer for Relief.

The Parties

The Plaintiff Ali Nosrat is a citizen of the United States and a resident of Bethesda, Maryland.  ECF No. 1 at ¶¶ 1 and 16.

The Plaintiff Marzieh Motamedi is a permanent resident of the United States and a resident of Bethesda, Maryland.  *Id.* at ¶ 16.

The Plaintiff Gholmahossein Nosrat is a citizen of Iran.  *Id.* at ¶¶ 1 and 18.

The Defendant Marco Rubio is the Secretary of the United States Department of State. ECF No. 6 at ¶ 19.

The Defendant Kristi Noem is the Secretary of the United States Department of Homeland Security.  *Id.* at ¶ 20.

The Defendant Pamela Bondi is the Attorney General of the United States.  *Id.* at ¶ 21.

Visa Applications

As background, on June 14, 2021, Plaintiff Ali Nosrat filed two I-130 family-based immigrant visa petitions for his parents with the United States Citizenship and Immigration Services ("USCIS").  ECF No. 1 at ¶ 2; *see* ECF Nos. 1-5.  On October 31, 2022, DHS approved the I-130 petitions.  ECF No. 1 at ¶ 3.  Thereafter, Plaintiffs Marzieh Motamedi and

---

[2] The facts recited in this memorandum opinion are taken from the complaint; the Defendants' motion to dismiss and the memorandum in support thereof; the Plaintiffs' response in opposition to the Defendants' motion and memorandum in support thereof; and the Defendants' reply brief.  ECF Nos. 1, 6, 6-1, 7, 7-1 and 8.

[3] Defendants Marco Rubio, Kristi Noem, and Pam Bondi are automatically substituted as parties to this action, replacing Defendants Anthony Blinken, Alejandro Mayorkas and Merrick Garland, respectively.  *See* Fed. R. Civ. P. 25(d).

Gholmahossein Nosrat attended their immigrant visa interviews on November 20, 2023. *Id.* at ¶ 6; ECF No. 1-6.

After these interviews, Ms. Motamedi and Mr. Nosrat received letters stating that their visa had been refused under INA Section 221(g) and placed in administrative processing. ECF Nos. 1 at ¶ 7; 1-7 and 6-1 at 7. The consular officer also directed the Plaintiffs to submit copies of their passports and birth certificates. Ms. Motamedi and Mr. Nosrat, subsequently, provided the State Department with the additional information requested. ECF Nos. 1 at ¶¶ 27 and 32; 6-1 at 7.

Plaintiff Marzieh Motamedi received her immigrant visa on December 1, 2023, and she later became a permanent resident of the United States on May 11, 2024. ECF No. 1 at ¶¶ 8-9. But, as of March 11, 2024, Plaintiff Gholmahossein Nosrat's case remained in administrative processing and his visa application had not been approved by USCIS. *Id.* at ¶ 10; ECF No. 1-10.

In the complaint, the Plaintiffs allege that the Defendants' failure to process and approve Plaintiff Gholmahossein Nosrat's visa application violates the INA and APA federal laws and has unnecessarily delayed the adjudication of the visa application. *See* ECF No. 1. And so, the Plaintiffs request that the Court, among other things, declare that the Defendants' refusal to adjudicate Mr. Nosrat's visa application violates the INA and APA and order the Defendants to adjudicate the application within a reasonable period of time. *Id.* at Prayer for Relief.

### B. Procedural History

The Plaintiffs commenced this civil action on November 17, 2024. *See* ECF No. 1. On March 20, 2025, the Defendants filed a motion to dismiss the complaint, pursuant to Fed R. Civ P. 12(b)(1) and (b)(6), and a memorandum in support thereof. ECF Nos. 6 and 6-1. On April 11, 2025, the Plaintiffs filed a response in opposition to the Defendants' motion and a memorandum in support thereof. *See* ECF Nos. 7 and 7-1. On April 16, 2025, the Defendants filed a reply brief. *See* ECF No. 8.

The Government's motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss based on lack of subject-matter jurisdiction under Rule 12(b)(1) addresses whether the Court has the competence or authority to hear and decide a particular case.

*See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  In this regard, the Fourth Circuit has held that a plaintiff bears the burden of proving that subject-matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  And so, the Court should dismiss a case for lack of subject-matter jurisdiction "where a claim fails to allege facts upon which the Court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

### B.   Fed. R. Civ P12(b)(6)

When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Inc.*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)).

### C.   The Immigration And Nationality Act

The Immigration and Nationality Act ("INA") requires that "all nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C § 1202(d) (emphasis added).  A "consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a).  Under Section 221(g) of the INA, a consular officer may refuse a family-based visa petition due to missing information or the need for administrative processing.  *See* INA § 221(g) (codified at 8 U.S.C. § 1201(g)).

Section 1252 of the INA provides that "court[s] [do] not have jurisdiction to review any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229(b), 1229(c), 1255 [of the INA]," nor "any other decision or action of the Attorney General or the Secretary of Homeland Security [where] the authority . . . is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B) (1952).  The Supreme Court has interpreted the jurisdictional bar regarding "any judgment . . . granting . . . relief" under Section 1252(a)(2)(B)(i)'s enumerated sections to apply

4

to all "factual determinations" made by the Attorney General. *Patel v. Garland*, 596 U.S. 328 (2022). The Fourth Circuit has declined to review factual determinations made by the IJ and BIA. *Uvalle v. Garland*, No. 21-2418, 2023 WL 2446717, at *3 (4th Cir. Mar. 10, 2023) (noting that *Patel*'s jurisdictional bar extends to "any [§ 1252(a)(2)(B)] review" of factual determinations); 8 U.S.C. § 1252(a)(2)(B)(ii) (applying jurisdictional bar to "any other decision or action of the Attorney General or the Secretary of Homeland Security").

But individuals who have filed as petitioners before the USCIS can overcome Section 1252's jurisdictional bar by raising a constitutional claim or question of law. 8 U.S.C. §§ 1252(a)(2)(B) and 1252(a)(2)(D). Such petitioners must file their claim before a United States court of appeals during a removal proceeding. *Id.* § 1252(a)(2)(B). And so, the Fourth Circuit has held that the exclusive means for judicial review of a legal issue under Section 1252 is a removal proceeding before a United States court of appeals. *Id.* § 1252(a)(2)(D*); see also Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 620-21 (4th Cir. 2010) (citing *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009)).

Relevant to this dispute, the United States Court of Appeals for the District of Columbia has held that a consular officer has no duty to adjudicate a visa application once the application has been officially refused. *Karimova v. Abate*, No. 21-02433, 2024 WL 3517852, *3-4 (D.C. Cir. July 24, 2024). In that case, the D.C. Circuit found that a plaintiff failed to adequately allege that a consular officer had a duty to act, where the consular officer had already officially refused a visa application and chosen to place the application in administrative processing. *Id*. Given this, the D.C. Circuit affirmed the district court's decision to dismiss the claim in that case, because the plaintiff "has not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing." *Id*. at *3. This Court has similarly held that a consular officer owes no duty to make a final decision on a visa application after the application has been officially refused. *Niroomand v. DHS*, No. 24-02103, 2025 WL 1837266, *5-7 (D. Md. July 3, 2025). And so, courts have dismissed claims based a consular officer's failure to take further action on a refused visa application.

D. The Mandamus Act And Section 1158

The Mandamus Act vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is an

5

"extraordinary remedy" which "will issue only to compel the performance of a 'clear nondiscretionary duty.'" *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  Such relief should be issued "only if [the plaintiff] has exhausted all other avenues of relief." *Heckler*, 466 U.S. at 616.  In this regard, a plaintiff bears the heavy burden to show all three elements of a mandamus claim to invoke this Court's jurisdiction, namely that: (1) the plaintiff has shown a clear right to the relief sought; (2) the defendant has a clear duty to do the particular act requested by the plaintiff; and (3) no other adequate remedy is available.  *See In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988); *Asare v. Ferro*, 999 F. Supp. 657, 659 (D. Md. 1998).  This Court has held that mandamus cannot be used to compel the performance of discretionary duties of Federal Government officers, but only to compel ministerial acts.  *Asare*, 999 F. Supp. at 659; *see also Meyers v. U.S. Dist. Ct. for Dist. of Maryland Balt. Div.*, No. 23-3015, 2024 WL 493268, at *2 (D. Md. Feb. 8, 2024) ("A ministerial act is one in which the law prescribes and defines a duty to be performed with such precision as to leave nothing to the exercise of discretion or judgment.").

      Lastly, Title 8, United States Code, Section 1158(d)(5)(A)(iii) provides that asylum applications "shall be completed within 180 days" of filing in the absence of exceptional circumstances.  8 U.S.C. § 1158(d)(5)(A)(iii).  But, Congress has precluded the creation of any private rights stemming from this timing provision.  8 U.S.C. § 1158(d)(7) (providing that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person").

### IV.    ANALYSIS

      The Defendants have moved to dismiss this matter, pursuant to Fed R. Civ. P. 12(b)(1) and (b)(6), upon the grounds that: (1) the Defendants do not have a clear, non-discretionary duty to re-adjudicate refused visa applications; (2) the Court lacks jurisdiction over the Plaintiffs' claims, because the consular officer already adjudicated Mr. Nosrat's application and therefore, the Plaintiffs' claims are moot; (3) the doctrine of consular nonreviewability precludes judicial review of the Plaintiffs' claims; and (4) even if jurisdiction can be established, the alleged delay in this case is not unreasonable as a matter of law.  *See* ECF Nos. 6 and 6-1.  And so, the Defendants request that the Court dismiss the complaint.  ECF No. 6-1 at 21.

The Plaintiffs counter that the Court should not dismiss this matter, because: (1) the Court has subject-matter jurisdiction over their claims, because the Defendants have not refused Mr. Nosrat's visa application and the application remains pending; (2) the doctrine of consular nonreviewability does not preclude their claims, because Mr. Nosrat's claim remains in administrative processing; and (3) they state a plausible claim for unreasonable delay. *See* ECF No. 7-1. And so, the Plaintiffs request that the Court deny the Defendants' motion to dismiss. *Id.* at 8.

For the reasons set forth below, the Plaintiffs have not met their burden to show that the Court possesses subject-matter jurisdiction to consider their claims seeking to compel the Defendants to complete the adjudication of Mr. Nosrat's visa application. And so, the Court: (1) GRANTS-in-PART the Defendants' motion to dismiss (ECF No. 6) and (3) DISMISSES the complaint.

V.    ANALYSIS

A.    The Court May Not Consider This Matter

As an initial matter, the Defendants persuasively argue that the Court does not possess subject-matter jurisdiction to consider the Plaintiffs' claim under the Mandamus Act, because the State Department does not owe the Plaintiffs a clear, non-discretionary duty with regards to the timing of the processing of Mr. Nosrat's asylum application, or the re-adjudication of that application. The Mandamus Act vests this Court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But, as the Supreme Court has long recognized, mandamus relief is an "extraordinary remedy," which "will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp.*, 488 U.S. at 121 (quotations omitted); *see also Heckler*, 466 U.S. at 616 (holding that mandamus "provide[s] a remedy for a plaintiff only if he has exhausted all other avenues of relief").

To show that mandamus relief is appropriate in this case, the Plaintiffs must show three things: (1) clear right to the relief sought; (2) the Government has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available. *See In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d at 138; *Asare*, 999 F. Supp. at 659; *cf. Hyatt v. U.S. Patent & Trademark Off.*, 146 F. Supp. 3d 771, 783 (E.D. Va. 2015) (holding no mandamus claim for patent applications pending over 20 years, because the agency was "under no legal

7

obligation to cause an expeditious . . . examination of a patent application"); *Mohammed v. Holder*, 695 F. Supp. 2d 284, 291 (E.D. Va. 2010) (holding no mandamus jurisdiction to compel USCIS to adjudicate adjustment of a status application). In this regard, this Court has held that mandamus relief cannot be used to compel the performance of discretionary duties of Federal Government officers. *Asare*, 999 F. Supp. at 659; *Martynenko v. Donis*, No. 24-02218, 2025 WL 1685667, at *3-4 (D. Md. June 16, 2025).

In this case, the Plaintiffs have not met their burden to establish subject-matter jurisdiction under the Mandamus Act, because they have not shown that the State Department has a clear, non-discretionary duty to re-adjudicate Mr. Nosrat's officially refused asylum application within a specified timeframe. Title 8, United States Code, Section 1158(d)(5)(A) provides a 180-day timeframe for the completion of asylum applications. 8 U.S.C. § 1158(d)(5)(A). But, Congress expressly declined to create a private right of action to enforce this timeframe. 8 U.S.C. § 1158(d) (providing that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person"). Given this, this Court has observed, "it is apparent that USCIS enjoys broad discretion regarding how swiftly [asylum] decisions are made." *Tawah v. Mayorkas*, No. 23-02920, 2024 WL 2155060, at *2 (D. Md. May 14, 2024) (citation omitted); *see also Polfliet v. Cuccinelli*, 955 F.3d 377, 382 (4th Cir. 2020) ("A statute need not literally contain the word 'discretion' in order to 'specify' discretion . . . ."); *Martynenko*, 2025 WL 1685667, at *4. And so, courts have held that there is no private right of action under Section 1158 for a plaintiff to enforce the timeframe for completing an asylum application where the plaintiff has not shown that the Defendants owe him a "clear duty" to complete the adjudication of his asylum application within the timeframe set forth in Section 1158. *See Noumbissie v. Garland*, No. 22-3357, 2023 WL 8600510, at *2 (D. Md. Nov. 1, 2023); *Tawah*, 2024 WL 2155060, at *2.

The INA also makes clear that the only mandatory duty owed by a consular official to a visa applicant is to either issue the visa or refuse the visa application during the interview process under Sections 212(a) and 221(g) of the INA. *See* 22 C.F.R. § 42.81(a). Given this, several courts have held that a consular officer has no duty to adjudicate a visa application once the application has been officially refused. *Karimova*, 2024 WL 3517852, at *3-6 (holding that the plaintiff failed to adequately allege that a consular officer had a duty to act to support a

mandamus petition, where the consular officer had already officially refused a visa application and chosen to place the application in administrative processing.); *see also Niroomand*, 2025 WL 1837266, at *5-6. And so, courts have dismissed mandamus and APA claims seeking to require a consular officer to take further action on a refused visa application. *Id*.

The Court adopts this reasoning here. In this case, there is no dispute that Mr. Nosrat had his interview with a counselor officer with the U.S. Embassy/Consulate General Yerevan, Armenia on or about November 20, 2023, and that he later received a letter from the consular officer stating that his visa had been refused under INA Section 221(g) and placed in administrative processing. ECF Nos. 1 at ¶ 7; 1-7 and 6-1 at 7. The parties also agree that the consular officer directed Mr. Nosrat to submit copies of his passport and birth certificates and that Mr. Nosrat later provided this information. ECF No. 1 at ¶¶ 27 and 32; 6-1 at 7. Given this, the undisputed facts in this case show that the Defendants officially refused Mr. Nosrat's visa application in 2023.

While the Plaintiffs correctly observe that Mr. Nosrat has submitted additional information to the State Department, so that the State Department may reconsider the decision to refuse his visa application, the Plaintiffs point to no statute or regulation that imposes a mandatory duty on the State Department to re-adjudicate the application, or that imposes a specific time frame for reconsidering a refused visa application. ECF No. 7-1. Given this, the Court agrees with the Defendants that any further consideration of Mr. Nosrat's visa application falls within the discretion of the State Department. *See, e.g*, *Turner v. Blinken*, No. 24-318, 2024 WL 4957178, at *6 (D. Md. Dec. 3, 2024) (holding that consular officers have no duty under the INA or its regulations to re-adjudicate the refused visa application.). For this reason, the Plaintiffs cannot rely upon the Mandamus Act to establish subject-matter jurisdiction in this case.

### B. The Plaintiffs Have Not Established Jurisdiction Under The APA

The Plaintiffs' reliance upon the APA to establish jurisdiction is also misplaced. To invoke the Court's jurisdiction under the APA here, the Plaintiffs must point to a provision within the APA that authorizes judicial review of the Defendants' action. *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (holding that failure to identify agency actions eligible for review under the APA is a "jurisdictional defect"); *Martynenko*, 2025 WL 1685667, at *4. In this regard, the APA precludes judicial review of agency action if the agency's action is committed to agency discretion by law. 5 U.S.C. § 701(a). Here, there is no statute or regulation

9

that sets a mandatory timeline for consular officers to re-adjudicate an officially refused visa application. Notably, Section 555(b) of the APA simply requires that agencies act within a reasonable time frame. 5 U.S.C § 555(b). And so, the Plaintiffs have also not shown that the Court may consider their claims under the APA. *See* 5 U.S.C. § 701(a)(1); *see also Martynenko*, 2025 WL 1685667, at *4; *L.M. v. Johnson*, 150 F. Supp. 3d 202, 209-10 (E.D.N.Y. 2015) ("Simply put, Congress has expressly barred Plaintiffs from claiming any legally enforceable right to have their [asylum] applications adjudicated within the provided timeframes.").[4]

## VI.  CONCLUSION

In sum, the Plaintiffs have not met their burden to establish the Court's subject-matter jurisdiction in this matter. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Defendants' motion to dismiss (ECF No. 6); and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge

---

[4] Because the Court concludes that it does not possess subject-matter jurisdiction to consider the Plaintiff's claims, the Court does not reach the other issues raised in the Defendants' dispositive motion. ECF Nos. 6 and 6-1.